**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

REPUBLIC SERVICES OF INDIANA       )
LIMITED PARTNERSHIP,               )
                                   )
          Plaintiff,               )
vs.                                )        **Case No. 1:21-cv-108-HAB-SLC**
                                   )
COE HEATING & AIR CONDITIONING,    )
INC.                               )
                                   )
          Defendants.              )

<u>**DEFENDANT COE HEATING & AIR CONDITIONING, INC.'S MEMORANDUM OF**</u>
<u>**LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

Defendant Coe Heating & Air Conditioning ("Coe"), by counsel, Christopher J. Uyhelji and Martin J. Gardner of Gardner & Rans P.C., in support of Defendant's Motion for Summary Judgment, submits the following Memorandum of Law.

<u>**SUMMARY OF THE ARGUMENT**</u>

Republic's claims fail as a matter of law, because there is no admissible evidence that the Space Ray closed infrared tube heaters installed by Coe in the paint area of Building 1 and the Sheboygan Blue Aqua Enamel Paint caused the fire at Building 1. The Space-Ray infrared heaters created no conditions that were causal to the fire, and the Space-Ray infrared heaters were eliminated as a potential ignition source. The Sheboygan Blue Aqua Enamel Paint is a water based, zero flammability rating, non-combustible product that does not sustain combustion. The Sheboygan Blue Aqua Enamel Paint is not flammable or combustible in wet, dry, liquid or solid form. The cause of the fire is undetermined. The point of origin for the fire is most likely the storage room in Building 1 and not the room where the heaters were located.

1

The Space Ray closed infrared tube heaters were properly installed by Coe at Republic's Building 1. Ronald Dantzer inspected the installation of the closed infrared tube heaters at Building 1 prior to the fire and concluded that the Space Ray closed infrared tube heating system was properly installed by Coe. Further, it is undisputed the heaters were properly installed in a direct-vent configuration whereby combustion air was obtained from uncontaminated air outside the heated space and this configuration was a manufacturer's recommended configuration.

The proper measure of damages for a permanently destroyed structure on land in Indiana is the fair market value of the structure pre-destruction plus demolition costs. Based on the undisputed facts, Coe is entitled to a determination as a matter of law that the proper measure of damages in this case is the fair market value of Building 1 pre-fire. Coe is also entitled to a determination as a matter of law that the fair market value of Republic's Building 1 was $550,000 pre-fire.

## I.  STATEMENT OF MATERIAL FACTS

1.   On or about March 19, 2019, at approximately 11:15 p.m., a fire started inside the maintenance area ("Building 1") of Republic's operations buildings located at 6231 Macbeth Rd., Fort Wayne, Indiana.[1]  On or about March 19, 2019, a fire completely destroyed Republic's Building 1 and the building collapsed upon itself.[2]

2.   Republic's Building 1 did not contain a paint booth and only had a room that Republic used to paint dumpsters.[3]  Republic painted trash dumpsters in part of Building 1 using an airless sprayer that sprayed approximately 24 inches and Sheboygan Blue Aqua Enamel Paint.[4]

---

[1] Plaintiff's Amended Complaint, ¶ 18.
[2] Plaintiff's Amended Complaint, ¶ 21.
[3] Deposition of Trevor Miller, in relevant part, is attached as Exhibit A, pp. 60-61.
[4] Deposition of Louis Inendino, in relevant part, is attached as Exhibit B, p. 89.

2

Painting operations by were completed by 3:00 p.m. at Building 1.[5] Republic employees regularly smoked cigarettes inside Republic's facility prior to the date of the fire.[6] Terry Reader ("Reader") was a Republic employee that worked in Building 1 welding and painting dumpsters in the months before the fire.[7] Reader testified that the Sheboygan Blue Aqua Enamel never started on fire and was not combustible based on real-world applications in either the Paint's wet or dry form prior to the fire.[8] This includes Terry welding using a plasma torch and an acetylene torch through the paint.[9]

4.     Republic's 30(b) (6) representative testified that there were no flammable finishes or flammable liquids in Building 1, and no paint booth in Building 1.[10]

5.     Coe began installing the Space Ray closed infrared tube heating system in Republic's Building 1 on January 31, 2019 and finished on February 4, 2019.[11] The Space Ray closed infrared tube heating system **was properly installed by Coe** in Republic's Building 1.[12]

6.     Korte, a heating company, quoted the same infrared tube heating system to Republic.[13] Korte concluded that the Space Ray closed infrared tube heaters were appropriate for the painting area of Building 1.[14]

7.     The Space Ray infrared tube heating system replaced open flame heaters that utilized room air for combustion and were used by Republic for decades in the paint room of

---

[5] Plaintiff's Amended Complaint, ¶ 22.
[6] Deposition of Terry Reader, in relevant part, is attached as Exhibit C, p. 156; Deposition of Samir Dizdarevic, in relevant part, is attached as Exhibit D, p. 50.
[7] Ex. C, pp. 38-39.
[8] Ex. C, pp. 38-39, 63-65, 114-115, 138.
[9] *Id.*
[10] Deposition of Justin Davis, in relevant part, is attached Exhibit E, pp. 43, 75, 96-97.
[11] Plaintiff's Amended Complaint, ¶ 16.
[12] Deposition of Ron Dantzer, in relevant part, is attached as Exhibit F, pp. 79, 117, 150-152; Deposition of Michael Agosti, in relevant part, is attached as Exhibit G, pp. 18, 178, 182, 202; Deposition of Scott Jones, in relevant part, is attached as Exhibit H, pp. 16, 29, 30, 35, 36, 101.
[13] Ex. A, pp. 47-48, 59-61, 63-64.
[14] Ex. A, 48, 60, 64; Korte Proposal.

Building 1.[15] The Space Ray infrared tube heating system is a closed system that pulls from external, non-room, air.[16] The Space Ray closed infrared tube heating system was located fourteen (14) feet from the floor in Building 1 and the ceiling in the painting room was over fifteen (15) feet high.[17]

8.    NFPA (National Fire Protection Agency) 921 is a comprehensive, peer-reviewed, and detailed guide for fire investigation used by fire investigators.[18] Under NFPA 921 § 3.3.32, combustible is defined as capable of undergoing combustion.    Under NFPA 921 § 3.3.83, flammable is defined as capable of burning with a flame.

9.    Sheboygan Blue Aqua Enamel Paint is a water based, zero flammability rating, non-combustible product that does not sustain combustion.[19] Sheboygan Blue Aqua Enamel Paint is a water-based paint and is not flammable or combustible in its wet or dry form.[20] Sheboygan Blue Aqua Enamel Paint, in either liquid or solid form, does not support combustion.[21] There are no expert opinions that the Sheboygan Blue Aqua Enamel Paint is actually flammable or combustible. Michael Vergon (Space Ray's Fire Investigator), Sheree Wells (Republic's Fire Debris Forensic Scientist), Michael Agosti (Coe's Fire Investigator), and Laurel Mason (Coe's Fire Debris Forensic Scientist) determined that the Sheboygan Blue Aqua Enamel Paint is not actually flammable or combustible.[22]

---

[15] Ex. G, pp. 202-203.
[16] Ex. H, pp. 30, 35, 36, 40, 99, 100.
[17] Ex. F, pp. 79, 117, 150, 151, 152; Ex. A, pp. 47-48, 59-61, 63-64.
[18] Report of Michael Agosti is attached as Exhibit I; Report of Michael Vergon is attached as Exhibit J.
[19] Ex. I, pp. 5-6; Ex. J; Expert Report of Laurel Mason is attached as Exhibit K, pp. 15-16; Deposition of Michael Vergon is attached as Exhibit L, pp. 9, 101-104; Ex. G, pp. 170-171.
[20] Ex. J.; Ex. K, pp. 15-16; Exhibit I, pp. 5-6; Ex. L, pp. 101-104; Ex. I, pp. 170-171; Deposition of Sheree Wells is attached as Exhibit M, pp. 21-23, 25, 27, 29; see also Technical Data Sheet for Sheboygan Blue Aqua Enamel Paint.
[21] Id.
[22] Id.

10.     The Space-Ray infrared heaters created no conditions that were causal to the fire.[23] The Space-Ray infrared heaters were eliminated as a potential ignition source by Scott Jones.[24] Space-Ray's expert, Scott Jones, determined to a reasonable degree of scientific certainty that the Space-Ray infrared heaters did not cause this fire and were not causal to the fire.[25]  According to Scott Jones, the internal surfaces of the heaters were not contaminated by paint residue as the air flowing through the heaters was obtained from outside and exhausted outside. Jones stated that the heaters were installed in a direct-vent configuration whereby combustion air was obtained from uncontaminated air outside the heated space. This configuration was a manufacturer's recommended configuration according to Jones.[26]

11.     Coe's Fire Investigator, Michael Agosti, determined that the fire origin related to the fire incident at Republic's Building 1 was only able to be determined within a general area of fire origin.  This area of fire origin was very broad and was not able to be brought down to a more specific area and or point of fire origin.[27]  Michael Agosti's opinion, within a reasonable degree of fire science certainty, is that the fire cause is undetermined.[28]  A specific area and/or point of fire origin were not able to be determined. Additionally, all potential, competent ignition sources were not eliminated.[29]

12.     Space Ray's Fire Investigator, Michael Vergon's ("Vergon") opinion is that there is no data to support fire origination at the Space Ray heaters, or that the fire was caused in any way by the Space ray heaters.[30]  There is insufficient data by which to substantiate any other

---

[23] Ex, H, pp. 16, 58, 101; Expert Report of Scott Jones is attached as Exhibit N, p. 15.
[24] Ex. H, p 58.
[25] Ex. H, pp. 103, 104; Ex. N, p. 15.
[26] Ex. N, p. 15; Ex H, pp. 99-100.
[27] Ex. I, 5-6; Ex. G, pp. 213-214.
[28] Ex. I, 5-6; Ex. G, pp. 226-227, 229-230.
[29] Id.
[30] Ex. J, pp. 26-28; Ex. L, pp. 36, 37, 78-81, 87-89, 101-104 106-107.

potential cause to the fire.[31]  Vergon's opinion is that the data more supports fire origination within the storage room and not the paint bay.[32]  Vergon concluded that other potential ignition sources include discarded smoking material, failed electrical components, or not properly stored or discarded rags containing paint thinner could not be properly excluded as potential causes of the fire.[33]  Vergon also tested the flammability and combustibility of the Paint at the scene of the fire, and determined the Paint was not flammable or combustible.[34]

13.   The employee of Republic that first witnessed the fire, Samir Dizdarevic, testified that he first saw flames at the roof line and coming out of overhead garage door to the storage room.[35]

14.   Coe's Fire Debris Forensic Scientist Expert Laurel Mason's opinion within a reasonable degree of scientific certainty in her field is that the Sheboygan Blue Aqua Enamel Paint, in either liquid or solid form, does not support combustion.[36]

15.   Republic's Fire Investigator James Foster's ("Foster") opinions are the subject of Coe's contemporaneously filed Motion to Exclude Testimony of Plaintiff's Expert James Foster under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and the Federal Rules of Evidence.  As addressed in the Motion, Foster used unreliable methodology to determine the cause and origin of the fire.   James Foster's purported opinion is based on the false and untested assumption that the Sheboygan Blue Aqua Enamel Paint is flammable and combustible.  See Defendant's Memorandum of Law in Support of Motion to Exclude Plaintiff's Expert James Foster.   Foster never tested the flammability or combustibility of the Sheboygan Blue Aqua

---

[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] Ex. L, pp. 101-104.
[35] Ex. D, pp. 36, 59-60.
[36] Ex. K, pp. 15-16; Deposition of Laurel Mason, in relevant part, is attached as Exhibit O, pp. 71, 80, 89, 94.

Enamel Paint in the Paint's wet, dry, liquid, or solid form.[37] Foster was unable to account for when the alleged paint actually accumulated on the heaters—whether paint accumulated on the heaters after the fire, the building collapsed, fire suppression efforts, and the heaters laid unprotected from the elements in the fire debris for approximately two (2) months before the alleged collection.[38]

16.     Foster did not collect any of the buildings electrical systems or components from scene, did not rely on Republic's retained electrical engineer John Diggle's opinion, and ruled out electrical based upon Foster's own conclusion that no electrical devices were on at the time of fire. Foster testified that there was no testing done of the electrical components, including electrical panels.[39]

17.     John Diggle, a Professional Engineer and former co-worker at Rimkus with James Foster, testified that he could not rule out electrical as a cause of fire due to the extensive damage to the electrical systems and components.[40]

18.     Republic's Fire Protection Engineering Expert, Nicolaus Ozog, never tested the flammability or combustibility of the Sheboygan Blue Aqua Enamel Paint in the Paint's wet, dry, liquid, or solid form.[41] Republic's expert Nicolaus Ozog has no opinion whether the Sheboygan Blue Aqua Enamel Paint is actually flammable or combustible in the Paint's wet, dry, liquid, or solid form.[42]

19.     Republic's Fire Debris Expert Sharee Wells ("Wells") performed a flame test on the Sheboygan Blue Aqua Enamel Paint as to whether or not it would ignite and whether or not it

---

[37] Deposition of James Foster, in relevant part, is attached as Exhibit P pp. 125-126.
[38] Ex. L, pp. 68-72; Ex. I, pp. 5-6; Ex. M, pp. 66-67; Ex. O, p. 107; Ex. K, pp. 7-10.
[39] Ex. P, 163-164.
[40] Deposition of John Diggle is attached as Exhibit Q, pp. 21, 22, 23, 24.
[41] Deposition of Nicolaus Ozog is attached as Exhibit R, pp. 19-20, 56-57, 59.
[42] Ex. R, pp. 19-20, 56-57, 59.

would sustain a flame.[43]  Wells flame tests for the Paint were negative.[44]  Wells concluded that the Paint itself is nonflammable because it does contain a large amount of water.[45]

20.     According to Coe's Damages Expert, David Abraham, the fair market value of Republic's Building 1 was $550,000 pre-fire.[46]

21.     According to Republic's Damages Expert, Kenneth Itles, the replacement cost of Republic's Building 1 is $2,761,899 post-fire.[47]  Kenneth Itles does not have an opinion as to the fair market value of Building pre-fire.[48]

22.      Republic alleges in its Amended Complaint that "[t]he cause and origin of the fire was determined to be a direct result of the Heaters."[49]

23.     Republic's Negligence Count I, Breach of Express Warranty Count II, Negligent Misrepresentation Count III, Breach of Implied Warranty of Merchantability Count IV, Breach of Implied Warranty of Fitness for a Particular Purpose Count V are based on the allegation that infrared tube heaters proximately caused the fire on March 19, 2019 at Building 1.[50]

## II.    **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on a

---

[43] Ex. M, pp. 21-23, 25, 27, 29.
[44] *Id.*
[45] *Id.*
[46] Deposition of David Abraham, in relevant part, is attached as Exhibit S, pp. 56, 64; Expert Report of David Abraham and C.V. is attached as Exhibit T, p. 85.
[47] Deposition of Kenneth Itles, in relevant part, is attached as Exhibit U, pp. 22, 23, 37, 80-81.
[48] Ex. U, pp. 22, 23, 37.
[49] Plaintiff's Amended Complaint, ¶ 26.
[50] Plaintiff's Amended Complaint, ¶¶ 31, 40, 46, 51, 56.

particular issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bellaver v. Quanex Corp.*, 200 F.2d 485, 492 (7th Cir. 2000). The Court must "construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Liberty Lobby, Inc.*, 477 U.S. at 255; and *Del Raso v. U.S.*, 244 F.3d 567, 570 (7th Cir. 2001).

The non-moving party "may not simply rest on his pleadings, but must demonstrate by specific evidence that there is a genuine issue of triable fact." *Colip v. Clare*, 26 F.3d 712, 714 (7th Cir. 1994). A "mere scintilla of evidence in support of the plaintiff's position will be insufficient" to avoid summary judgment. *Liberty Lobby, Inc.*, 477 U.S. at 252. Nor will "a self-serving affidavit, unsupported by specific concrete facts reflected in the record," preclude summary judgment. *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## III.   **ARGUMENT**

When sitting in diversity, federal courts must apply the substantive law of the forum state. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). Indiana law applies to this case. *Id.*

Republic's Amended Complaint includes five (5) separate counts, which are as follows: Count I Negligence; Count II Breach of Express Warranty; Count III Negligent Misrepresentation; Count IV Breach of Implied Warranty; and Count V Breach of Implied Warranty of Fitness for a Particular Purpose. All five counts are based on the allegation that the closed Space Ray infrared

tube heating system installed by Coe caused the fire at Republic's facility. In other words, all of Republic's claims against Coe are based on the allegation that the Space Ray closed infrared tube heaters proximately caused the fire on March 19, 2019 at Building 1.

To survive summary judgment on such an allegation, admissible expert testimony as to the closed infrared tube heaters being the cause and origin of the fire is necessary. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789–90 (7th Cir. 2017) (without admissible causation opinions from experts, plaintiffs cannot prove that one of defendants' products caused the fire.); *see also Fuesting v. Zimmer, Inc.*, 362 F. App'x 560, 564 (7th Cir. 2010) ("Given that all causation testimony has been excluded, [the plaintiff's] strict liability and negligence claims necessarily fail, and summary judgment in favor of [the defendant] is appropriate"). Based on Republic's theory, this would also require expert testimony as to the flammability and combustibility of the Sheboygan Blue Aqua Enamel Paint.

Under Indiana law, a negligence claim requires a plaintiff to show a duty owed by the defendant to the plaintiff, breach of that duty, and injury resulting from the breach. *Podemski v. Praxair, Inc.*, 87 N.E.3d 540, 546–47 (Ind. Ct. App. 2017).

Negligent misrepresentation has four elements under Indiana law: (1) the defendant, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions; (2) the defendant fails to exercise reasonable care or competence in obtaining or communicating the information; (3) the plaintiff justifiably relies upon the information supplied by the defendant; and (4) the plaintiff suffers pecuniary loss as a result. *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 747 (Ind. 2010); Restatement (Second) of Torts § 552).

Meanwhile, to prevail on a breach of warranty claim, the plaintiff must show (1) the existence of a warranty; (2) breach of that warranty; and (3) that the breach was the proximate cause of the loss sustained. See *Irmscher Suppliers, Inc. v. Schuler*, 909 N.E.2d 1040, 1048 (Ind. Ct. App. 2009); *Swan Lake Holdings, LLC v. Yamaha Golf Cart Co.*, No. 3:09-CV-228-PPS, 2010 WL 3894576 (N.D. Ind. Sept. 27, 2010).   Ind. Code § 26–1–2–314 states that in order for goods to be merchantable they must be fit for the ordinary purposes for which such goods are used. Implied warranty of merchantability is a broad warranty that covers the consumer's reasonable expectations that a good will be fit for its ordinary use. *Pizel v. Monaco Coach Corp.*, 364 F. Supp. 2d 790, 793 (N.D. Ind. 2005). An implied warranty of fitness for a particular purpose exists, unless excluded, where the seller reasonably knows about that purpose, and knows that the buyer is relying on the seller to select goods suitable for that purpose.  Ind. Code § 26–1–2–315; *see also Paper Mfrs. Co. v. Rescuers, Inc.*, 60 F.Supp.2d 869, 881 (N.D. Ind. 1999); and *Pizel v. Monaco Coach Corp.*, 364 F. Supp. 2d 790, 793 (N.D. Ind. 2005).

**A.     Republic's claims fail as a matter of law, because there is no admissible evidence that the Space Ray closed infrared tube heaters and Sheboygan Blue Aqua Enamel Paint caused the fire at Building 1.**

The Space Ray closed infrared tube heaters and Sheboygan Blue Aqua Enamel Paint did not proximately cause the fire at Republic's Building 1 as a matter of law.

Under Indiana law, "proximate cause" has two aspects: (1) whether the injury would not have occurred without the defendant's negligent act or omission (also referred to as "causation in fact"); and (2) whether the injury "is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008) (applying Indiana law) (internal citations omitted). Proximate cause "must be based upon provable facts and cannot be based upon mere guess,

11

conjecture, surmise, possibility or speculation." *Collins v. Am. Optometric Ass'n*, 693 F.2d 636, 640 (7th Cir. 1982) (applying Indiana law) (a jury's determination of proximate cause must be based upon provable facts and cannot be based upon mere guess, conjecture, surmise, possibility or speculation).

In other words, the factual evidence supplied must reflect some "reasonable certainty or probability." *Mr. Bults, Inc. v. Orlando*, 990 N.E.2d 1, 5 (Ind. Ct. App. 2013). Under Indiana law, negligence will not be inferred; rather, specific factual evidence, or reasonable inferences that might be drawn therefrom, on each element must be designated to the trial court. *Kincade v. Mac Corp*, 773 N.E.2d 909, 912 (Ind. Ct. App. 2002). Proximate cause is a question of law when a single conclusion can be drawn from the facts. *City of Indianapolis Housing Auth. v. Pippin*, 726 N.E.2d 341, 347 (Ind. Ct. App. 2000).

Indiana courts and Federal courts have routinely held that summary judgment is appropriate when there is insufficient evidence in the record for a jury to find that an incident and resultant damages occurred in a manner for which the defendant would be responsible without resorting to speculation. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677-78 (7th Cir. 2008) (applying Indiana law); *Houston v. Hyatt Regency Indianapolis*, 997 F. Supp. 2d 914, 922 (S.D. Ind. 2014) (applying Indiana law) (there was no evidence that hotel was proximate cause of guest's injuries) *Ogden v. Decatur Cnty. Hospital*, 509 N.E.2d 901, 903-04 (Ind. Ct. App. 1987) (affirming summary judgment on proximate cause); *Fuesting v. Zimmer, Inc.*, 362 F. App'x 560, 564 (7th Cir. 2010); *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 879 (7th Cir. 2021) (applying Illinois law) (affirming summary judgment on unreasonably dangerous and proximate causation); and *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789–90 (7th Cir. 2017).

Additionally, other jurisdictions have applied the same reasoning to cases involving fires. *Cmty. Preschool & Nursery of E. Liberty, LLC v. Tri-State Realty, Inc.*, 430 F. App'x 125 (3d Cir. 2011) (applying Pennsylvania law) (plaintiff's negligence claim failed because it could not prove that defendant's allegedly negligent conduct caused the fire); and *Investors Real Estate Trust Properties, Inc. v. Terra Pac. Midwest, Inc.*, 686 N.W.2d 140, 145-46 (ND. 2004) (owner failed to present affirmative evidence that the fire which destroyed the apartment building was caused by contractor's alleged negligence, and thus failed to establish causation).

In *Gopalratnam v. Hewlett-Packard Co.*, the plaintiffs filed a products liability suit against separate manufacturers of a laptop, battery pack, and individual battery cells based on the allegation that the fire was caused by a defective lithium-ion battery cell from their son's laptop. *Id.* at 775. The plaintiffs supported their causation theory solely through testimony from two expert witnesses, whom defendants later moved to exclude under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The district court granted defendants' motions to exclude and entered summary judgment in their favor. The plaintiffs appealed the district court's ruling. *Id.*

The 7th Circuit Court of Appeals concluded that plaintiffs' expert (Ph.D. in inorganic chemistry and purported expert on battery safety) "failed to 'bridge the analytical gap' between the accepted differential appearance of the laptop battery cells and his contested conclusion that such differential appearance was caused by an internal fault in Cell A." *Id.* at 776, 786-787. According to the Court, there is no "rational connection" between the expert's data and his opinion. *Id.* at 786-787. The Court was equally critical of the "third factual basis for plaintiffs' 'internal fault' opinion: that Cell A acted as a projectile." *Id.* Although Cell A was found in one of the

debris piles outside plaintiffs' home, no one, including the plaintiffs' expert, could establish precisely how it got there, nor where it was located prior to cleanup. *Id.*

As a result, at least two possible alternatives cut against the expert's theory. *Id.* It was possible that Cell A was located near the other electronic remnants but was simply missed by investigators and subsequently discarded with the remaining fire debris. *Id.* It was also possible that the cell originally came to rest away from the bed but was moved there by fire suppression efforts (such as a running fire hose) rather than an explosive internal fault. Either alternative (or others) would undermine the expert's finding that Cell A acted as a projectile, which would in turn further weaken his ultimate conclusion that an internal fault led to its failure. *Id.* at 787. What mattered according to the *Gopalratnam* Court was that the expert failed to adequately account for other possible explanations in arriving at his conclusion. See Fed. R. Evid. 702 advisory committee's note to 2000 amendment (finding "[w]hether the expert has adequately accounted for obvious alternative explanations" to be relevant "in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact"). *Id.*

Even less reliable according to the *Gopalratnam* Court was the expert's opinion that the internal fault in Cell A was specifically caused by a manufacturing defect in the cell or a failure in the computer's electrical circuitry. *Id* at 787-788. The expert's opinion was that the internal fault was caused "by either a manufacturing defect in the cell" or "a failure of the computer's control/safety circuitry". *Id.* However, the expert could not provide details as to what the specific defect was; why it transpired; when it occurred in the manufacturing process; or even where such manufacturing took place. *Id.* Rather, the battery safety expert simply opined that, because several manufacturing processes "can cause" an internal short circuit, such must have occurred here. *Id.* The Court concluded that this is simply too speculative to pass muster under *Daubert* and Rule

14

702. *Id.* Because the battery expert's opinions were excluded, the fire investigator's opinions regarding the cause of the fire that relied on, and were based on, the battery expert's unreliable methodology were also properly excluded by the district court. *Id.* at 776, 789.

The *Gopalratnam* Court concluded that, because the "inner workings of a laptop and its components, including the battery pack and its cells, are highly technical," expert testimony was necessary for plaintiffs to prevail on their claims. Therefore, without the plaintiffs' expert's causation theories, plaintiffs could not prove that one of defendants' products caused the fire. The *Gopalratnam* Court affirmed summary judgment in favor of defendants. *Id.* at 790.

Like the plaintiffs in *Gopaltratnam*, Republic's entire causation theory is based singularly on the unreliable expert opinions of Republic's Fire Investigator James Foster, which are the subject of Coe's contemporaneously filed Motion to Exclude. The inner workings of electrical components, the point of origin of a fire, and the probable cause of the fire require expert testimony. Without James Foster's origin and causation theories, Republic has no evidence that the closed infrared tube heaters and Sheboygan Blue Aqua Enamel Paint caused the fire at Building 1. Like the defendants in *Gopaltratnam*, when Coe's contemporaneously filed Motion to Exclude is granted, then Coe would be entitled—based on that exclusion alone—to judgment as a matter of law on proximate causation. *See Fuesting*, 362 F. App'x at 564 (7th Cir. 2010) ("summary judgment was appropriate as all causation testimony was excluded).

Additionally, the admissible evidence establishes that the Space-Ray infrared heaters created no conditions that were causal to the fire, and the Space-Ray infrared heaters were eliminated as a potential ignition source by Scott Jones, Michael Vergon, and Michael Agosti. Further, Foster *never even tested the flammability or combustibility* of the Sheboygan Blue Aqua Enamel Paint in the Paint's wet, dry, liquid, or solid form. The undisputed evidence establishes

that the Sheboygan Blue Aqua Enamel Paint is a water based, zero flammability rating, non-combustible product that does not sustain combustion.  The Sheboygan Blue Aqua Enamel Paint is not flammable or combustible in wet, dry, liquid or solid form as a matter of law.   Michael Vergon, Michael Agosti, Laurel Mason, and Sheree Wells all determined that the Sheboygan Blue Aqua Enamel Paint is not flammable or combustible.  Wells, Republic's own expert, performed a flame test on the Paint, which was negative.  Moreover, Republic's own former employee, Terry Reader, testified that he worked in the paint area of Building 1 and that the Sheboygan Blue Aqua Enamel Paint was not flammable or combustible even when he used his welding equipment.

In this case, there is no admissible evidence as to when the Paint (assuming it ever did) accumulated on the heaters.  The Paint could have accumulated on the heaters after the fire, the building collapsed, fire suppression efforts, and the heaters laid unprotected from the elements in the fire debris for approximately two (2) months before the alleged collection.  As it stands, both Michael Vergon and Michael Agosti determined to a reasonable degree of scientific certainty that the cause of the fire at Republic's Building 1 is undetermined. Vergon opined that there is no data to support fire origination at the Space Ray heaters, or that the fire was caused in any way by the Space ray heaters.  Vergon also concluded that there is insufficient data by which to substantiate any other potential cause to the fire.

As to the point of origin for the fire, Vergon's opinion is that the most likely point of origin is the storage room in Building 1 and not the room where the heaters were located. Agosti, meanwhile, was not able to determine a specific area and/or point of fire origin due to the extent of the fire damage and the fact the building collapsed.  Vergon and Agosti both concluded that all potential, competent ignition sources were not eliminated.  This included, among others, discarded smoking material and failed electrical components.  The electric components, conduits, and system

were not collected at the scene or preserved for testing by Republic's retained experts.   John Diggle, a Professional Engineer and former co-worker at Rimkus with James Foster, testified that he could not rule out the buildings electrical systems or components as a cause of fire due to the extensive damage to the electrical systems.   Based on the undisputed admissible evidence, the Sheboygan Blue Aqua Enamel Paint is not flammable or combustible in wet, dry, liquid or solid form and the infrared tube heaters installed by Coe did not cause the fire at Republic's Building 1. The heaters were properly excluded as a potential ignition source.   Overall, the cause of the fire is undetermined.

Based on the undisputed admissible evidence, Coe is entitled to a determination as a matter of law that the infrared tube heaters installed by Coe at Building 1 did not proximately cause the fire at Republic's Building 1.   Further, Coe is entitled to a determination as a matter of law that the Sheboygan Blue Aqua Enamel Paint is not flammable or combustible in wet, dry, liquid or solid form.   Coe is entitled to summary judgment on all Plaintiff's claims as Coe's conduct did not proximately cause any of Republic's alleged damages.

**B.     The Space Ray closed infrared tube heaters were properly installed by Coe at Republic's Building 1.**

Under Indiana law, if the facts are undisputed and only one inference can be drawn from those facts, then whether there has been a breach of duty can be resolved by summary judgment. *Northern Indiana Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind.2003).   A defendant is entitled to summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim. *Countrymark Coop., Inc. v. Hammes*, 892 N.E.2d 683, 688 (Ind. Ct. App. 2008), *trans. denied*.   Where the facts are undisputed and lead to but a single inference or conclusion, the court as a matter of law may determine whether a breach of duty has occurred. *Podemski v. Praxair, Inc.*, 87 N.E.3d 540, 547 (Ind. Ct. App. 2017); *see also Pfenning v. Lineman*,

947 N.E.2d 392, 404 (Ind. 2011) (concluding that the conduct was reasonable as a matter of law and did not constitute a breach of duty as a matter of law.

Coe began installing the Space Ray closed infrared tube heating system in Republic's Building 1 on January 31, 2019 and finished on February 4, 2019. There were no issues with the Space Ray closed infrared tube heating system prior to the March 19, 2019 fire. Korte, a heating company and competitor of Coe, quoted the same Space Ray infrared tube heating system to Republic. Korte concluded that the Space Ray closed infrared tube heaters appropriate for the painting area of Building 1. Ronald Dantzer of Coe inspected the installation of the closed infrared tube heaters at Building 1 prior to the fire and concluded that the Space Ray closed infrared tube heating system was properly installed by Coe. Michael Agosti testified that the heaters were properly installed. According to Scott Jones, the heaters were properly installed in a direct-vent configuration whereby combustion air was obtained from uncontaminated air outside the heated space. This configuration, according to Jones, was a manufacturer's recommended configuration. Jones concluded that the Space-Ray infrared heaters created no conditions that were causal to the fire and ruled the heaters out as an ignition source.

Here, the material facts are undisputed and Coe is entitled to a determination as a matter of law that Coe properly installed the infrared tube heating system in Republic's Building 1.

**C.      The proper measure of damages for a permanently destroyed structure on land in Indiana is the fair market value of the structure pre-destruction plus demolition costs.**

Here, it is undisputed that Republic's Building 1 was completely destroyed in a fire. Under Indiana law, a permanent injury to a building is one where the cost of restoration exceeds the market value of the building prior to the injury. *Gen. Outdoor Advert. Co. v. La Salle Realty Corp.*, 218 N.E.2d 141, 151 (Ind. Ct. App. 1966). According to Indiana appellate courts, this definition

of permanent injury raises a safeguard against a windfall while protecting the property rights involved. *Id.* This applies to an injury to property attached to real estate that has a value separate from the real estate. *Id.* "This means that where such property is permanently damaged, the proper measure of damages would be the market value before the injury: whereas if the damage is non-permanent, the proper measure would be the cost of restoration. *Id.*

*General Outdoors'* fair market value pre-permanent injury measure of damages has been followed by Indiana appellate courts for fifty-seven (57) years in the context of the proper measure of damages for a permanent injury to a structure on land. *City of Marion v. Taylor*, 785 N.E.2d 663, 665 (Ind. Ct. App. 2003); *Warrick Cnty. v. Waste Mgmt. of Evansville*, 732 N.E.2d 1255, 1258 (Ind. Ct. App. 2000); *Sanborn Elec. Co. v. Bloomington Athletic Club*, 433 N.E.2d 81, 88 (Ind. Ct. App. 1982); *Neal v. Bullock*, 538 N.E.2d 308, 309 (Ind. Ct. App. 1989) (applying the *General Outdoors* measure of damage to trees on land). Notably, fair market value pre-injury is the same measure of damages applied to a permanent injury to personal property in Indiana. See *Ridenour v. Furness*, 546 N.E.2d 322, 325 (Ind. Ct. App. 1989) (damage for the total destruction of personal property is measured by the fair market value of the personal property at the time of loss).

As recently as last year, the Indiana Court of Appeals determined that the applicable measure of damages to a permanently destroyed cottage was the cottage's fair market value pre-destruction plus demolition costs. *Nordin v. Town of Syracuse*, 192 N.E.3d 205, 209 (Ind. Ct. App. 2022) (transfer was originally granted but the Court of Appeals' opinion has subsequently been certified and transfer dismissed).  In *Nordin*, the plaintiffs' cottage was damaged from water flooding the interior of the structure.  The pre-flooding county appraisal for the cottage valued the cottage at $14,700.  *Id. at 208, 210.* The Court determined that this was evidence of the cottage's

fair market value prior to the flooding. The estimated repair costs for the cottage post-flooding were between $43,062.26 and $55,928.44. *Id.* at 210. The plaintiffs only presented evidence of new construction or replacement cost estimates of $255,000, $294,589.83, and $269,483. *Id.* at 208. The Court concluded that the cottage was permanently injured and awarded the plaintiffs $14,700 as the fair market value of the cottage pre-damage plus remanded the case to the trial court for the determination of demolition costs. *Id.* at 210.

In this case, David Abraham, Coe's Damage Expert, determined that the fair market value of Republic's Building 1 was $550,000 pre-fire. Meanwhile, Kenneth Itle, Republic's Damage Expert, did not determine or offer any opinion as to the fair market value of Republic's Building 1 pre-fire. Itle determined a cost estimate for a new building, or otherwise known as, the replacement cost for the destroyed Building 1. According to Itle, the replacement cost for constructing a new building to replace Republic's Building 1 is $2,761,899. Under *General Outdoors*, the proper measure of damages in this case is the fair market value of Building 1 pre-fire. Building 1 was completely destroyed by the fire and the replacement/restoration cost far exceeds the fair market value of Building 1 pre-fire.

Based on the undisputed facts, Coe is entitled to a determination as a matter of law that the proper measure of damages in this case is the fair market value of Building 1 pre-fire. Coe is also entitled to determination as a matter of law that the fair market value of Republic's Building 1 was $550,000 pre-fire.

## IV.   **CONCLUSION**

For all of the above and foregoing reasons, Defendant Coe Heating & Air Conditioning, Inc., by counsel, respectfully requests that this Court grant its Motion for Summary Judgment, enter judgment in its favor, and grant all other just and proper relief.

Respectfully submitted,

_/s/ Christopher J. Uyhelji_
Christopher J. Uyhelji, Attorney No.: 28814-53
Martin J. Gardner, Attorney No.: 11557-49
Gardner & Rans P.C.
202 S. Michigan Street, Suite 801
South Bend, Indiana 46601
Phone:  (574) 233-6035
cuyhelji@gardnerandrans.com
mgardner@gardnerandrans.com
Attorneys for Defendant
Coe Heating & Air Conditioning, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 28th day of April, 2023 a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by depositing same in the United States Mail in envelopes properly addressed and with sufficient postage affixed, electronic mail or the CM/ECF system thereto:

Thomas Jones
James E. Zoccola
Lewis & Kappes
One American Square, Suite 2500
Indianapolis, Indiana 46282-0003
TJones@lewis-kappes.com
JZoccola@lewis-kappes.com

Date: April 28, 2023

_/s/ Christopher J. Uyhelji_
Christopher J. Uyhelji, #28814-53